## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT MISSOURI

**NIEMA JORDAN**,

    Plaintiff,

v.      Case No.

**BI-STATE DEVELOPMENT AGENCY
OF THE MISSOURI-ILLINOIS
METROPOLITAN DISTRICT**      **Jury Trial Demanded**

**&**

<u>Serve</u>:
One Metropolitan Square
211 N. Broadway, Ste 700
St. Louis, MO 63102

**LAWRENCE BREW**, *in his individual Capacity,*

<u>Serve</u>:
110 Wabash Spur Drive
O'Fallon, MO 63366

    Defendants.

## **COMPLAINT**

This is a civil action brought against Defendant Bi-State Development Agency of the Missouri-Illinois Metropolitan District and Defendant Lawrence Brew ("Defendants") to redress (1) the employment sex discrimination and harassment of Plaintiff Niema Jordan ("Jordan" or "Plaintiff") and (2) Defendants' retaliatory actions against Plaintiff due to Plaintiff's reports of, *inter alia*, sex discrimination and harassment.

1

**JURISDICTION, VENUE AND PARTIES**

1. This action is authorized and instituted pursuant to, *inter alia*, 29 U.S.C. § 621 *et set*.; § 706(f)(1), § 706(f)(3), and § 707(a) through (c) of Title VII; 42 U.S.C. §2000e-5(f)(1) §2000e-5(f)(3) and §2000e6(a) through (c), 29 U.S.C. § 626(c), and Plaintiff.

2. Plaintiff resides in and is domiciled in this judicial district. Since in or around April 2015 Plaintiff has been employed as a Bus Operator for Defendant Bi-State.

3. Plaintiff was an "employee" of Defendant Bi-State within the meaning of all laws under which she asserts claims.

4. In relevant part here, Defendant Bi-State owns buses and provides public mass transportation in the St. Louis metropolitan area.

5. The 8th Circuit has held that Defendant Bi-State is subject to suit under Title VII and 42 U.S.C § 1983.

6. Defendant Bi-State at all times was a person acting under the color of state law under 42 U.S.C. § 1983.

7. Defendant Bi-State is an "employer" within the meaning of Title VII.

8. At times pertinent to the allegations of this Complaint, Defendant Lawrence Brew acted under color of state law and within the scope of his authority as an employee of the State of Missouri and/or Illinois.

9. At times pertinent to the allegations of this Complaint, Defendant Lawrence Brew was personally involved in depriving Plaintiff of her rights and discriminating, harassing, and retaliating against Plaintiff.

10. As times pertinent to the allegations of this Complaint, Defendant Brew was Plaintiff's supervisor and was acting under color of state law.

## FACTUAL ALLEGATIONS

11. Leading up to September 2018, one of Plaintiff's supervisors, Lawrence Brew ("Brew") – a known sexual harasser – would routinely make sexual comments to Plaintiff.

12. Although the two did not interact that often prior to September 2018, when they did, Plaintiff was chilled by Brew's sexual innuendos and behavior.

13. In September 2018, things worsened.  Around that time, Brew and Plaintiff began interacting more frequently due to Plaintiff expressing interest in a promotional opportunity.

14. At this point, Brew would regularly insist that Plaintiff meet him in his office.  He would close the door; he would speak to her sexually and insist that if Plaintiff wanted to be "off the bus" she "knew how to prove" herself to him because she was a "smart girl."

15. Brew was constantly seeking a quid pro quo relationship with Plaintiff and while propositioning plaintiff would make sexual charged gestures and asking her "how she was special."

16. Around September 24, 2018, Plaintiff had finally had enough.  It was around this time that on a phone call with Brew, he again sexually propositioned her in a quid pro quo manner. Suggesting that if he would engage in sexual activity with her, she would get the promotion she had been inquiring about.

17. Plaintiff reported this harassment – along with the previous sexual harassment – to Brew's supervisors, Trenis Winters and Bernice Kelly.

18. Defendant did not take disciplinary action.  And upon information and belief the complaint was ignored.

19. Then, in or around October 2018, Plaintiff applied for an open position – the promotion she had been looking into for quite some time.

20. After she applied, Plaintiff – along with other applicants – were given an initial litmus test/interview. All applicants were required to get a certain passing score to be eligible for the next phase of the interview process.

21. The main interviewer was Brew.

22. Plaintiff passed the first phase of the interview and was escorted to the next phase.

23. Later that day, Plaintiff was told by Defendant Bi-State that she had gotten the job.

24. Plaintiff called Brew on one or more occasions to request additional information about the job and when her pay would be changed.

25. Brew again used these calls to sexually proposition Plaintiff.

26. He also informed Plaintiff that she was to train or "shadow" in the office two hours a day. Plaintiff trained/shadowed for her new position for weeks, showing up two hours early yet not being compensated for that time.

27. This prompted Plaintiff to again call Brew and ask about pay.

28. Yet again, Brew sexually propositioned Plaintiff.

29. Once again, Plaintiff reported Brew to his Supervisor. Additionally, however, this time Plaintiff also complained to Defendant Bi-State's HR and EEO groups – a Ms. Kelly and Ms. Bentz.

30. Shockingly, Defendant Bi-State told Plaintiff that she was likely just misinterpreting Brew and to not worry about it.

31. Instead, Defendant Bi-State turned this onto Plaintiff and told her she needed to focus on her potential to get a promotion and doing what management asked.

32. Defendant Bi-State ultimately intimidated and shamed Plaintiff into withdrawing her complaint.

33. Just weeks after, however, Brew removed Plaintiff from the training program and revoked her promotion.

34. Upon information and belief, prior to those decisions, Brew was informed that he was under investigation based on sexual harassment complaints made by Plaintiff.

35. Around that time, Brew hired several of his friends and family members into management and informed them of the complaints made against him by Plaintiff.

36. These managers – including Sparkle Catchup, Makita Lynn Brown, and Abigail Wilson – conspired with Brew to retaliate against and harass Plaintiff.

37. They would take Plaintiff off the clock while she was at work; they would constantly berate and demean Plaintiff, yelling at her for complaining to HR and management too much; and they would refuse to permit Plaintiff to take vacation while allowing similarly situated others.

38. Defendant Bi-State removed Plaintiff from the work schedule; they would not allow Plaintiff to volunteer at the Christmas party – lying to Plaintiff and saying 1) she was not allowed to help and 2) that helpers were not paid; they placed unfounded discipline in Plaintiff's personnel file; they forced Plaintiff – without any good cause – to submit to a drug test.

39. After being stripped of her promotion, and while dealing with the clear retaliatory actions of Defendants, in or around late November 2018, Plaintiff reinstated her complaint against Brew – this time adding the information about what his cohorts were doing.

40. Defendant Bi-State purportedly started an investigation at this time.  But once again, no disciplinary actions were taken and harassment persisted, causing Plaintiff to file two more similar complaints in February and March 2019.

41. Ultimately, after Defendant Bi-State was refusing to remedy the retaliation and harassment, Plaintiff filed a Charge of Discrimination with the EEOC on or around March 27, 2019, setting forth the discrimination and harassment based on sex in addition to the aforementioned retaliation.

42. Sadly, the retaliation and harassment multiplied after Plaintiff's Charge.  More of the same behavior from Defendant Bi-State's management.

43. The work environment became untenable.  Plaintiff filed another Charge on or around June 10, 2019, for retaliation.

44. Shortly thereafter, Plaintiff was forced to take FMLA leave because of the stress and anxiety that Defendants were causing.

45. Notably, prior to reporting Brew, Plaintiff had never been reprimanded or disciplined; she was, and is, an exemplary employee.

46. Though Plaintiff did not work much from June 2019 to November 2019, when she did, it was more of the same.

47. Defendant Bi-State would refuse to let Plaintiff clock in when she arrived to work, saying the system was down but would allow all others to clock in.

48. Defendant Bi-State would routinely call Plaintiff into the office in order chastise her in attempts to bait Plaintiff into reacting.  Plaintiff did no such thing.

49. Defendant Bi-State purportedly "lost" Plaintiff's banking paperwork, containing confidential account information, four separate times.  To date, Defendant Bi-State claims to not know where it is despite Plaintiff physically handing copes to management, Abigail Wilson.

50. Defendant Bi-State refused to allow Plaintiff a float day, requiring her to come into the office and then letting someone who asked after Plaintiff the float day off.  This is entirely against procedure and was pure retaliation.

51. Defendant Bi-State even attempted to discipline Plaintiff for using FMLA time.

52. Most of the retaliation and unfounded discipline would have gone unchecked had Plaintiff not been vigilant.  She was constantly having to check her file and look over her shoulder.

53. Notably, despite Plaintiff's complaints about Brew occurring as early as September 2018, Brew was not terminated for his conduct until the end of 2019.

54. To date, the harassment and retaliation persists.  It has even spilled over to Defendant Bi-State's counsel, James Foster, who on several occasions has contacted Plaintiff directly – via telephone (even leaving voicemails) and email – attempting to convince her to inequitably resolve the matter.

55. Mr. Foster engaged in this conduct with complete knowledge that Plaintiff was represented by counsel.

56. On January 29, 2020 the EEOC issued Plaintiff a Notice of Suit Rights, for both of the aforementioned Charges, authorizing her to pursue her Title VII claims in this Court.

57. Plaintiff has filed this lawsuit within 90 days of her receipt of the Right to Sue notice.

## COUNT I
## Sex Discrimination/Harassment in Violation of Title VII
### (*Against Bi-State*)

58.  Plaintiff repleads the allegations contained in all paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

59. Title VII prohibits employers from denying employees equal employment opportunities with respect to terms, conditions, benefits, or privileges or employment based on their sex.

60. Defendant Bi-State denied Plaintiff equal terms, conditions, benefits, or privileges of employment because of her sex by fostering and condoning sexual harassment

61. Plaintiff is member of a protected group – female.

62. Plaintiff was subjected to unwelcome sexual harassment as set forth above.

63. Plaintiff's gender was a motivating factor in the harassment.

64. The harassment and discrimination was severe and pervasive and resulted in an environment so hostile that it materially affected the terms and conditions of Plaintiff's employment.

65. Defendant Bi-State knew of, and condoned, the sexual harassment and did not promptly remediate the harassment.

66. Defendant Bi-State, by the actions described herein, discriminated against Plaintiff due to her sex in violation of the Title VII.

67. As a consequence of Defendant Bi-State's actions as described herein, Plaintiff has lost, and continues to lose, wages and other financial incidents and benefits of employment.

68. As a consequence of Defendant Bi-State's actions as described herein, Plaintiff has experienced emotional distress, embarrassment, and a loss of reputation.

69. As a consequence of Defendant Bi-State's actions as described herein, Plaintiff has incurred, and will continue to incur, attorney's fees, costs, and expenses.

70. The conduct of Defendant Bi-State was outrageous and willfully undertaken with reckless disregard for Plaintiff's rights.

## COUNT II
### Retaliation in Violation of Title VII
*(Against Bi-State)*

71. Plaintiff repleads the allegations contained in all paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

72. Plaintiff repleads the allegations contained in all paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

73. Title VII prohibits employers from denying employees equal employment opportunities with respect to terms, conditions, benefits, or privileges or employment based on their sex and from retaliating against employees based on protected activities.

74. Defendant Bi-State, by the actions described herein, discriminated against Plaintiff due to her sex in violation of the Title VII.

75. Defendant Bi-State denied Plaintiff equal terms, conditions, benefits, or privileges of employment – i.e. retaliated against Plaintiff – because of her report of sex discrimination/harassment as set forth above.

76. Plaintiff's protected activity was a motivating factor for Defendant Bi-State's retaliation.

77. As a consequence of Defendant Bi-State's actions as described herein, Plaintiff has lost, and continues to lose, wages and other financial incidents and benefits of employment.

78. As a consequence of Defendant Bi-State's actions as described herein, Plaintiff has experienced emotional distress, embarrassment, and a loss of reputation.

79. As a consequence of Defendant Bi-State's actions as described herein, Plaintiff has incurred, and will continue to incur, attorney's fees, costs, and expenses.

80. The conduct of Defendant Bi-State was outrageous and willfully undertaken with reckless disregard for Plaintiff's rights.

### COUNT III
### Unlawful Deprivation of Federally Protected Rights – Equal Protection Clause of the Fourteenth Amendment, Section 1983
(*Against All Defendants*)

81. Plaintiff repleads the allegations contained in all paragraphs of this Complaint and incorporates them by reference as if fully set forth herein.

82. Defendant Bi-State is a "person" as used under Section 1983.

83. Defendant Brew is a "person" as used under Section 1983.

84. The actions taken by Defendant Brew were taken in his official and/or individual capacity while acting under color of state law.

85. The actions of Defendant Bi-State were taken while acting under color of state law.

86. The Equal Protection Clause of the Fourteenth Amendment precludes individuals acting under color of state law from denying individuals equal treatment on the basis of, *inter alia*, sex or for engaging in protected activity such as reporting sex discrimination.

87. Defendants Brew and Bi-State deprived Plaintiff of her federally protected rights under the Equal Protection Clause of the Fourteenth Amendment because of sex and/or the protected activity of reporting sex discrimination/harassment, while acting under color of state law, by, as set forth in detail above, by engaging in and/or condoning and not promptly remedying sexual harassment and retaliating against Plaintiff for reporting sexual harassment by, among other things, withdrawing Plaintiff's promotion, denying her vacation time, and issuing false and unfounded discipline to Plaintiff.

88. Plaintiff's sex and/or protected activity was a motivating factor in Defendants' conduct towards her.

89. Defendants' actions were willful, intentional, and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights.  Exemplary damages are warranted to prevent similar unlawful conduct by Defendants.

90. Plaintiff was damaged by Defendants' conduct.

## **RELIEF SOUGHT – ALL COUNTS**

**I.      Injunctive Relief to Cease Unlawful Sex Discrimination and Retaliation**

Defendants' unlawful discriminatory (due to sex) and retaliatory conduct must be attacked from several directions.  Accordingly, Plaintiff respectfully requests that the Court enter an order declaring Defendants violated Title VII and the Equal Protection Clause of the Fourteenth Amendment and directing that Defendant Bi-State and/or Defendant Brew:

   a) Review, de novo, the reasons Plaintiff was not promoted and issue an order stating that Defendant(s) did not comply with federal law regarding her potential promotion;

   b) Conduct training for all managers regarding sex discrimination, retaliation and review Defendant Bi-State's policy regarding discrimination and retaliation;

   c) Conduct training regarding how to prevent bias (including stereotypes) from impeding the advancement of women and those who report sexual harassment in the workplace;

   d) Forbid future violations of Title VII and the Equal Protection of the Fourteenth Amendment and other laws prohibiting sex discrimination and retaliation in the workplace;

   e) Adopt policies aimed at preventing and remedying any future violations that may occur, including an effective reporting procedure and effective investigation procedures that prevent retaliation; and,

   f) Notify employees of the violation(s) and the remedy imposed by this Court.

**II.     Other Relief as the Court Deems Just and Equitable**

Plaintiff also respectfully requests that the Court order other monetary (consistent with the strictures of the Eleventh Amendment) and/or equitable relief, including, but not limited to:

a) Enjoining Defendants from further unlawful conduct;

b) Lost past and future wages (including benefits and interest), compensatory damages, liquidated or double damages and punitive damages;

c) Other monetary expenses incurred by Plaintiff as a result of Defendants' conduct;

d) Attorneys' fees and costs (including any expert witness's fees); and

e) All other and relief that the Court may deem equitable, just or appropriate that is available under applicable law.

## JURY DEMAND

Plaintiff demands a trial by jury of all issued raised in this Complaint.

Respectfully submitted,

**HKM EMPLOYMENT ATTORNEYS LLP**

By: */s/ S. Cody Reinberg*
S. Cody Reinberg, Mo. Bar #66174
9666 Olive Blvd., Suite 202A
St. Louis, MO  63132
314-391-9557 p/f
creinberg@hkm.com

Attorneys for Plaintiff Niema Jordan

Electronically filed on March 9, 2020