UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHAPTER 7 TRUSTEE FREDRICH CRUSE, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) )  Case No. 4:20-cv-00366-MTS ) |
| BI-STATE DEVELOPMENT AGENCY OF THE MISSOURI-ILLINOIS METROPOLITAN DISTRICT, et al., | ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Bi-State Development Agency of the Missouri-Illinois Metropolitan District ("Bi-State"), Lawrence Brew, Sparkle Catchup, and Young Abigail Willis's Joint Motion to Dismiss Counts III and IV of the Second Amended Complaint, Doc. [43]. The Motion is fully briefed. For the reasons that follow, the Motion is granted in part and denied in part.

**I.    BACKGROUND**[1]

This case arises out of Defendants' alleged mistreatment of Niema Jordan,[2] who has been employed as a Bus Operator for Defendant Bi-State since April 2015. Doc. [40] ¶ 2. Jordan alleged that prior to September 2018, she did not interact "that often" with Defendant Lawrence

---

[1] The Court draws these facts from Plaintiff's allegations in the Second Amended Complaint, Doc. [40]. In so doing, the Court must liberally construe the complaint in favor of Plaintiff and must grant all reasonable inferences in her favor. *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010); *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010); *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).

[2] Ms. Jordan originally filed this action, but the Court subsequently held that Fredrich Cruse, the trustee of Jordan's Chapter 7 bankruptcy estate, is the real party in interest in the case, and it accordingly substituted Trustee Cruse for Jordan as the Plaintiff. Doc. [39] at 1–3. While she is no longer a party in this action, for ease of reference the Court interchangeably refers to "Jordan" and "Plaintiff."

1

Brew, one of her supervisors, but that when she did, he "would routinely make sexual comments to [her]." *Id.* ¶¶ 11–12. In September 2018, Jordan expressed interest in a promotion, leading her to interact more frequently with Brew. *Id.* ¶ 13. Brew began "regularly insist[ing]" that Jordan meet him in his office, and he "would close the door" and "speak to her sexually," stating that if Jordan "wanted to be 'off the bus' she 'knew how to prove' herself to him because she was a 'smart girl.'" *Id.* ¶ 14. He also made sexually charged gestures and asked Jordan "how she was special." *Id.* ¶ 15. Around September 24, 2018, on a phone call with Jordan, Brew suggested that if she would engage in sexual activity with him, she would get the promotion. *Id.* ¶ 16. Based on his actions, Plaintiff alleged that "Brew was constantly seeking a quid pro quo relationship with" Jordan. *Id.* ¶ 15–16. Jordan reported Brew's conduct to his supervisors, but no disciplinary action was taken. *Id.* ¶ 17–18.

Around October 2018, Plaintiff applied for the promotion. *Id.* ¶ 19. Brew was her main interviewer, and Defendant Bi-State later informed her "that she had gotten the job." *Id.* ¶¶ 20–23. Jordan called Brew afterwards to ask questions related to the new job, and Brew again sexually propositioned Plaintiff on those calls. *Id.* ¶¶ 24–28. Jordan again reported Brew to his supervisors, but this time, she also complained to Bi-State's human resources and equal employment opportunity ("EEO") groups. *Id.* ¶ 29. In response, "Bi-State told [Jordan] she was likely just misinterpreting Brew and not to worry about it," telling her "she needed to focus on her potential to get a promotion and doing what management asked." *Id.* ¶ 30–31. Plaintiff alleged that Bi-State "ultimately intimidated and shamed Plaintiff into withdrawing her complaint." *Id.* ¶ 32. Weeks later, Brew revoked Jordan's promotion after he learned that he was under investigation for sexual harassment based on Jordan's complaints. *Id.* ¶¶ 33–34. He also "turned to several of his friends and family members in management," including Defendants Catchup and Willis, and

2

informed them of Jordan's complaints against him.  *Id.* ¶ 35.  Plaintiff alleged that those managers, again including Catchup and Willis, conspired with Brew to retaliate against and harass Jordan, which they did by taking her off the clock while she was at work, berating and demeaning her, yelling at her for complaining to HR and management too much, refusing to let her take vacation, removing her from the work schedule, preventing her from volunteering at a Christmas party, placing "unfounded discipline" in her personnel file, and forcing her, without good cause, to submit to a drug test.  *Id.* ¶¶ 36–38.

In November 2018, Jordan "reinstated" her complaint against Brew, adding to the complaint "information about what his cohorts were doing."  *Id.* ¶ 39.  Bi-State began an investigation, but "once again, no disciplinary actions were taken and harassment persisted," leading Jordan to file two similar complaints in February and March 2019.  *Id.* ¶ 40.  Unsatisfied with Bi-State's handling of the issues, Jordan filed a Charge of Discrimination with the EEOC on March 27, 2019 based on Defendants' conduct.  *Id.* ¶ 41.  According to Jordan, "the retaliation and harassment multiplied" after she filed the EEOC charge, including "[m]ore of the same behavior" from Bi-State's management, Catchup, and Willis.  *Id.* ¶ 42.  Because her work environment "became untenable," on June 10, 2019, Jordan filed another EEOC charge for retaliation.  *Id.* ¶ 43.  Because of Defendants' treatment of her and the resulting stress and anxiety, Jordan "was forced to take FMLA leave" shortly after her second EEOC charge.  *Id.* ¶ 44.

Jordan asserted that, though she did not work much from June 2019 to November 2019, "when she did, it was more of the same."  *Id.* ¶ 46.  Specifically, she alleged that Bi-State, Catchup and Willis, among other things, (1) refused to let her clock in when she arrived to work, "saying the system was down but . . . allow[ing] others to clock in;" (2) routinely calling her into the office to chastise her "in attempts to bait [her] into reacting;" (3) refusing to give her a "float day," even

3

though they gave one to a different employee who asked after Jordan; and (4) attempting to discipline her for using FMLA time. *Id.* ¶¶ 47–51. Jordan also found in her personnel file a police report that "falsely insinuate[d] illegal and wrongful activity" by Jordan, which was later removed once she brought it to Defendants' attention. *Id.* ¶ 53. Jordan alleged that the retaliation persisted, as Defendants refused to give her medical leave after she was exposed to a coworker who had COVID-19, even though Defendants had granted several of Jordan's coworkers' similar requests. *Id.* ¶ 57. Finally, in spite of her complaints, Brew was not fired for his conduct until the end of 2019. *Id.* ¶ 54.

In the Second Amended Complaint, Plaintiff asserts four Counts: (1) sex discrimination/harassment in violation of Title VII, against Bi-State; (2) retaliation in violation of Title VII, against Bi-State; (3) sex-based unlawful deprivation of federally protected rights under the Fourteenth Amendment's Equal Protection Clause and 42 U.S.C. § 1983, against Bi-State and Brew; and (4) unlawful deprivation of federally protected rights under the First Amendment and § 1983 (First Amendment Retaliation), against all Defendants. *Id.* at 8–14. Defendants now move to Dismiss Counts III and IV under Fed. R. Civ. P. 12(b)(6), arguing that Plaintiffs failed to state a claim in either Count. Doc. [43].

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The purpose of such a motion is to test the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the Court assumes all of a complaint's factual allegations to be true and makes all reasonable inferences in favor of the nonmoving party. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014). A complaint must contain "a short and plain statement of the claim

4

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  To survive a motion to dismiss, the complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Specifically, the complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'"  *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court "need not accept as true plaintiff's conclusory allegations or legal conclusions drawn from the facts."  *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).  The Court does not decide whether the plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to present evidence in support of the claim.  *See Twombly*, 550 U.S. at 556.

**III.   DISCUSSION**

   **A.  Count III: Violation of the Equal Protection Clause and § 1983 by Bi-State and Brew**

Defendants provided no substantive arguments as to the shortcomings of Count III of the Second Amended Complaint, instead hastily asserting that the Court should dismiss it only because "it is a mirror image of Count III of Plaintiff's First Amended Complaint, which was previously dismissed by this Court." Doc. [44] at 3.  After Plaintiff challenged that assertion, see Doc. [49] at 2, Defendants clarified in their Reply that Count III of the Second Amended Complaint "essentially contains the same **factual** allegations" as Count III of the First Amended Complaint. Doc. [53] at 2 (emphasis in original).  The Second Amended Complaint's Count III is therefore insufficient, Defendants reasoned, because the Court, in previously granting Defendants' Motion to Dismiss the First Amended Complaint, already "found these allegations insufficient to allege

5

that Defendant Brew was acting under color of state law when he allegedly engaged in sexual harassment." *Id.*

Defendants misunderstand the Court's decision on their first Motions to Dismiss. In Count III of the First Amended Complaint, Plaintiff asserted claims for retaliation, discrimination, and harassment under the Equal Protection Clause of the Fourteenth Amendment and § 1983 against all Defendants. Doc. [12] at 10, ¶¶ 83–92. Defendant Brew moved to dismiss Count III of the First Amended Complaint on the ground that Plaintiff failed to allege he was acting under color of state law. Doc. [16] at 6–9. Defendants Bi-State, Catchup, and Willis joined that Motion, and they additionally argued Count III failed to state a claim against Catchup and Willis because only the First Amendment (which Plaintiffs did not invoke in the First Amended Complaint), and not the Equal Protection Clause, provides a right to be free from retaliation. *See* Doc. [22] at 1, 3–4. In response to those arguments, Plaintiff argued that she successfully stated a claim for retaliation under the First Amendment, but she "acknowledge[d] that her First Amended Complaint did not specifically mention the First Amendment" and that "she may not proceed against Defendants under Section 1983 and the Equal Protection Clause for [r]etaliation." Doc. [28] at 2–4. She therefore requested leave to amend the First Amended Complaint to (1) remove from Count III her retaliation claims and Defendants Catchup and Willis and (2) add a Count IV for retaliation under the First Amendment against all Defendants. *Id.* at 4.

In ruling on the Motions to Dismiss, the Court specifically noted Defendants' arguments (1) that Plaintiff failed to allege Brew was acting under color of state law and (2) that Plaintiff "failed to allege a violation of her First Amendment right of free speech in conjunction with her retaliation claim under § 1983." Doc. [39] at 4. It also observed that Plaintiff argued she had a viable retaliation claim against Defendants and noted "her acknowledgement" that she could not

6

state a retaliation claim under the Equal Protection Clause. *Id.* In doing so, the Court stated that it "agree[d] with Plaintiff's concession that Count III of her First Amended Complaint [was] subject to dismissal *because* it" did not specifically mention the First Amendment in making her retaliation claim. *Id.* (emphasis added). "Accordingly," the Court granted Defendants' Motions to Dismiss Count III of the First Amended Complaint, but it granted Plaintiff leave to amend to clarify Count III. *Id.* at 4–5. In granting the Motions to Dismiss and leave to amend, the Court said nothing about Brew's "under color of law" argument—even though it had specifically noted that argument—and instead tied its ruling to Plaintiff's concession regarding her retaliation claim and her request to amend the Complaint. Thus, Defendants' argument that the Court already found Plaintiff's allegations insufficient to support that Brew was acting under color of law is based on a misinterpretation of the Court's explanation for its ruling. Because Defendants did not make any argument in support of dismissal of Count III, the Court will deny their Joint Motion to Dismiss as to that Count. *See Doe v. Siddig*, 810 F. Supp. 2d 127, 137–38 (D.D.C. 2011) ("[C]ourts need not resolve arguments raised in a cursory manner and with only the most bare-bones arguments in support."); c*f. Lamb v. Millennium Challenge Corp.*, 498 F. Supp. 3d 104, 116 (D.D.C. 2020) (ruling on motion to dismiss and not considering argument raised for first time in reply brief).

### B. Count IV: Violation of the First Amendment and § 1983 by All Defendants

Defendants argue that Plaintiff failed to allege any of the elements of a First Amendment retaliation claim, and therefore, they contend, she failed to state such a claim. Doc. [44] at 3–4. They suggest that (1) other than her EEOC charges, Plaintiff's complaints to management do not constitute protected speech, and (2) she failed to allege any adverse employment action that resulted from her filing of the EEOC charges. *Id.* at 5–8. More specifically, Defendants argue that the Court should dismiss the retaliation claim against Brew because Plaintiff failed to allege

7

Brew engaged in any adverse action in response to Plaintiff filing the EEOC charges, which Defendants contend represent Plaintiff's only protected speech. Doc. [44] at 5–6. They further assert Plaintiff's claims against Catchup and Willis fail because she did not allege that they engaged in any adverse action because of the EEOC charges or that they had knowledge of those charges. *Id.* at 6–8.

To state a claim for retaliation under the First Amendment, Plaintiff must plead facts showing "(1) that [s]he engaged in a constitutionally protected activity; (2) that [Defendants] took adverse action against [her] that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated in part by [her] exercise of [her] constitutional rights." *Eggenberger v. West Albany Twp.*, 820 F.3d 938, 943 (8th Cir. 2016) (quoting *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014)); *Agnew v. St. Louis Cnty.*, 504 F. Supp. 3d 989, 998–99 (E.D. Mo. 2020).

The Court will first address whether Plaintiff alleged that she engaged in any constitutionally protected conduct. "When the government[3] takes adverse action against a public employee, . . . the First Amendment is implicated only when the speech or petition that motivated the retaliation involves a matter of public concern." *L.L. Nelson Enters. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799, 808 (8th Cir. 2012); *McCullough v. Univ. of Ark. For Med. Scis.*, 559 F.3d 855, 866 (8th Cir. 2009). "Speech qualifies as a matter of public concern if it is 'fairly considered as relating to any matter of political, social, or other concern to the community.'" *Cronin v. Peterson*, 288 F. Supp. 3d 970, 996 (D. Neb. 2018) (quoting *Meyers v. Neb. HHS*, 324 F.3d 655, 659 (8th Cir. 2003)). "If the speech at issue is purely job-related, it does not qualify as a matter of public concern

---

[3] The Eighth Circuit has found that Defendant Bi-State is akin to a local governmental entity. *See United States ex rel. Fields v. Bi-State Dev. Agency of Mo.-Ill. Metro. Dist.*, 872 F.3d 872, 883 (8th Cir. 2017). It also has held that "Bi-State is subject to suit under 42 U.S.C. § 1983." *Barket, Levy & Fine, Inc. v. St. Louis Thermal Energy Corp.*, 948 F.2d 1084, 1087–88 (8th Cir. 1991).

and does not constitute protected speech under the First Amendment." *Id.* at 996 (citing *Anzaldua v. Ne. Ambulance & Fire Prot. Dist.*, 793 F.3d 822, 833 (8th Cir. 2015)).

It is well established that an EEOC Charge of Discrimination qualifies as protected speech under the First Amendment. *See Delgado-O'Neil v. City of Minneapolis*, 435 F. App'x 582, 584 (8th Cir. 2011) (citing *Tyler v. Univ. of Ark. Bd. of Trs.*, 628 F.3d 980, 986 (8th Cir. 2011)). But the picture is not so clear regarding Plaintiff's other purported protected speech—her complaints to Brew's supervisors in September, October, and November 2018, her complaints to Bi-State's HR and EEO groups in October and November 2018, and her similar complaints in February and March 2019. The Second Amended Complaint lacks allegations supporting any public aspects of Plaintiff's non-EEOC complaints. While Jordan's complaints of Brew's sexual harassment to his supervisors and Bi-State's HR and EEO groups might be of concern to the public, they were, based on Plaintiff's allegations, primarily motivated by concerns pertaining to her own employment. *See Sparr v. Ward*, 306 F.3d 589, 594–95 (8th Cir. 2002) ("Although the allegations of sexual harassment . . . could be of concern to the public, the record demonstrates [plaintiff] was speaking out as an employee, not as a concerned citizen."); *McCullough*, 559 F.3d at 867 (noting "the mere fact that the topic of [an] employee's speech [is] one in which the public might or would have had a great interest is of little moment" (alterations in original) (quoting *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir. 1993)); *cf. Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 706 (7th Cir. 2010) ("[S]ex discrimination in public employment can be a matter of public concern. But it is not always so. Purely personal grievances do not garner First Amendment protection, including personal grievances about sexual harassment in the workplace." (citations omitted)). Because her non-EEOC complaints "address[ed] only [Brew's] alleged discriminatory actions against her," *Nelson v. Special Admin. Bd. of St. Louis Pub. Schs.*, 873 F. Supp. 2d 1104, 1114 (E.D. Mo. 2012), and

9

were made only internally to different Bi-State departments, those complaints do not implicate any public concern and thus are not within the protection of the First Amendment. *See Winder v. Erste*, 566 F.3d 209, 215 (D.C. Cir. 2009) ("[W]e have consistently held that a public employee speaks *without* First Amendment protection when he reports conduct that interferes with his job responsibilities, even if the report is made outside his chain of command." (emphasis added)); *Sparr*, 306 F.3d at 595 (noting "the internal nature of [the plaintiff's] speech is a factor to be considered"); *Harrison v. Oakland Cnty.*, 612 F. Supp. 2d 848, 867–68 (E.D. Mich. 2009).

Since the EEOC charges are the only actions in which Plaintiff engaged that are protected by the First Amendment, the Court next must ask whether Plaintiff alleged that Defendants took adverse action against her that was motivated in part by her filing of the EEOC charges. *See Eggenberger*, 820 F.3d at 943. With respect to Defendant Brew, Plaintiff has not done so. While Plaintiff alleged that Brew revoked her promotion and conspired to retaliate against her, she alleged that conduct took place after her *non*-EEOC complaints. *See* Doc. [40] ¶¶ 29, 33–36. Plaintiff does not allege that Brew *himself* engaged in any allegedly adverse conduct toward her after either her first EEOC complaint in March 2019 or her second EEOC complaint in June 2019; instead, she alleged "the retaliation and harassment multiplied" after the March 2019 EEOC charge, specifically pleading "[m]ore of the same behavior from Defendant Bi-State's management and Defendants Sparkle Catchup and Young Abigail Willis." *Id.* ¶ 42; *see id.* ¶¶ 47–57 (naming only Bi-State, Catchup, and Willis, and not Brew, engaging in allegedly retaliatory conduct). Plaintiff has thus failed to establish the necessary causal relationship between her protected activities—the EEOC charges—and any adverse employment action caused by Brew. *See Lyons v. Vaught*, 781 F.3d 958, 962–63 (8th Cir. 2015). The Court will therefore dismiss the First Amendment retaliation claim against Brew.

Plaintiff's retaliation claim fares better against the other Defendants. First, Plaintiff adequately alleged that she suffered an adverse employment action. "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage," which "might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects." *Charleston v. McCarthy*, 926 F.3d 982, 989 (8th Cir. 2019) (quoting *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015)). And "[l]esser actions than demotion, suspension, or termination can be adverse employment actions if their cumulative effect causes an employee to suffer 'serious employment consequences' that adversely affect or undermine his position.'" *Id.* (quoting *Shockency v. Ramsey Cnty.*, 493 F.3d 941, 948 (8th Cir. 2007)). Among other conduct, Plaintiff asserted that Bi-State, Catchup, and Willis "refuse[d] to let [her] clock in when she arrived to work," they "took [her] off the clock while she was at work," and they "removed her from the work schedule." Doc. [40] ¶¶ 37–38, 42, 47, 102. Those actions may have cost Plaintiff money, thus amounting to a "cut[] in pay." *Charleston*, 926 F.3d at 989; *cf. Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 710 n.6 (6th Cir. 2007) ("We fail to understand how a loss of pay is anything other than an adverse employment action."). Importantly, they may also have cost her opportunity; it is plausible that not being permitted to work and not clocking in on time could have a negative effect on Plaintiff's future career prospects, particularly considering that Plaintiff was, and had been for some time, interested in and pursuing a promotion. *See* Doc. [40] ¶¶ 13, 19. Moreover, Plaintiff alleged several other retaliatory acts, including the inclusion of a false police report and "unfounded discipline in Plaintiff's personnel file," see *id.* ¶ 38, 53, that could cumulatively have caused her to suffer "'serious employment consequences' that adversely affect[ed] or undermine[d]" her position, especially given her aspirations for a promotion. *See Wagner*, 779 F.3d at 767 (quoting *Schockency*, 493 F.3d at 948). Plaintiff

11

sufficiently alleged that Bi-State, Catchup, and Willis caused her to suffer an adverse employment action "that would chill a person of ordinary firmness" from exercising her right to file an EEOC Charge of Discrimination. *Eggenberger*, 820 F.3d at 943.

Second, the Court rejects Defendants' contention that Plaintiff failed to allege that Catchup or Willis had knowledge of her EEOC charges. *See* Doc. [44] at 6. As noted, Plaintiff alleged that "the retaliation and harassment *multiplied*" after the March 2019 EEOC complaint, and she asserted "[m]ore of the same" retaliatory conduct, specifically by Bi-State's management, Catchup, and Willis. Doc. [40] ¶¶ 42, 47–51 (emphasis added). Read in the light most favorable to Plaintiff, the Court finds the allegation that the allegedly retaliatory conduct multiplied after the March 2019 EEOC complaint sufficient, at the motion to dismiss stage, to establish that Defendants Catchup and Willis knew about that EEOC complaint and that their actions were "motivated in part by [her] exercise of [her] constitutional rights." *Eggenberger*, 820 F.3d at 943; *see Schulte v. Conopco, Inc.*, 997 F.3d 823, 825 (8th Cir. 2021). Plaintiff thus stated a claim for First Amendment retaliation against Defendants Catchup, Willis, and Bi-State, and the Court denies the Motion to Dismiss Count IV as to those Defendants.

## Conclusion

Because of Defendants' misunderstanding of the Court's earlier ruling and lack of argument supporting dismissal of Plaintiff's equal protection claim, the Court denies Defendants' Motion to Dismiss Count III. As to Plaintiff's First Amendment retaliation claim, Plaintiff pleaded facts supporting that she engaged in a constitutionally protected activity in the form of her EEOC complaints, but her non-EEOC complaints to Bi-State supervisors and its HR and EEO groups do not fall within the First Amendment's protection. Plaintiff adequately alleged that Defendants Bi-State, Catchup, and Willis took adverse employment actions against her because of her EEOC

complaints, and she thus stated a claim for retaliation under the First Amendment against those Defendants.  However, she failed to allege that Defendant Brew took any adverse action against her as a result of her EEOC complaints, so she failed to state a First Amendment retaliation claim against him.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Joint Motion to Dismiss Counts III and IV of the Second Amended Complaint, Doc. [43], is **GRANTED in part** and **DENIED in part**.  The Motion is **DENIED** as to Plaintiff's equal protection claim (Count III) in full and as to her First Amendment retaliation claim (Count IV) against Defendants Bi-State, Catchup, and Willis.  The Motion is **GRANTED** as to Plaintiff's First Amendment retaliation claim only with respect to Defendant Brew.

Dated this 26th day of August, 2021.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE