UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHAPTER 7 TRUSTEE FREDRICH CRUSE, <br><br> Plaintiff, <br><br> vs. <br><br> BI-STATE DEVELOPMENT AGENCY OF THE MISSOURI-ILLINOIS METROPOLITAN DISTRICT, *et al.*, <br><br> Defendants. | Case No. 4:20-cv-366-MTS |

**MEMORANDUM AND ORDER**

Before the Court are the parties' cross Motions for Summary Judgment, Doc. [121] and [126], pursuant to Federal Rule of Civil Procedure 56, on Plaintiff's Second Amended Complaint, Doc. [40], asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Section 1983, 42 U.S.C. § 1983, based on sexual harassment and retaliation in the workplace. Because there remain genuine disputes of material fact relevant to each claim, the Court will deny the parties' Motions for Summary Judgment.

**I.   BACKGROUND**

Plaintiff Niema Jordan[1] sued her employer, Defendant Bi–State Development Agency of Missouri–Illinois Metropolitan District ("Bi-State"), based on alleged sexual harassment by her

---

[1] Jordan originally filed this action, but the Court subsequently held that Fredrich Cruse, the trustee of Jordan's Chapter 7 bankruptcy estate, is the real party in interest in the case, and it accordingly substituted Trustee Cruse for Jordan as the Plaintiff. Doc. [39] at 1–3. While she is no longer a party in this action, for ease of reference the Court interchangeably refers to "Jordan" and "Plaintiff."

1

supervisor and subsequent retaliatory conduct by Bi-State employees based on reporting her supervisor and other Bi-State employees.[2]

Lawrence Brew worked in a supervisorial role with Bi-State from approximately 2007 until October 2019. In April 2015, Bi-State hired Jordan. In or around the Fall of 2018, Jordan alleges Brew—her then supervisor—began sexually harassing her. According to Jordan, Brew sexually propositioned and harassed her, including *quid pro quo* harassment,[3] both in person and via telephone. In or around August or September of 2018, Jordan complained of Brew's conduct to a Bi-State manager, but nothing was done. Doc. [143-4] at 6 (21:25–22:20). During a telephone conversation between Jordan and Brew on September 24, 2018, Jordan asked what she could do to be promoted and in response, Brew told Jordan to show him why she was special or deserved the job, and when Jordan asked Brew what he meant, he said she was a smart girl and should be able to figure it out. Doc. [143] ¶ 30. Once again, Jordan reported Brew—this time to Human Resources ("HR"). Doc. [124-1] at 29–28. However, HR did not investigate and ultimately dismissed Jordan's complaints. *Id.* According to Jordan, Brew continued to sexually proposition and harass her, including *quid pro quo* harassment, and in October 2018, Jordan filed an internal harassment complaint about Brew to Bi-State's EEO group. Doc. [128-39] at 1. After several complaints of Brew's conduct within Bi-State, Jordan reported subsequent harassment and threats by Bi-State employees. In November 2018, Jordan filed an "official" Title VII complaint with the EEO group regarding Brew's conduct and Bi-State employees' subsequent retaliatory conduct. Doc. [128-16].

---

[2] Plaintiff also sued several individual defendants, including Lawrence Brew; however, those individuals are no longer parties in the case.

[3] The term "*quid pro quo*" harassment is typically a claim that an employer demanded sexual favors in exchange for job benefits and took tangible action against the plaintiff when she refused to acquiesce. *McMiller v. Metro*, 738 F.3d 185, 188 (8th Cir. 2013).

In December 2018, White Coleman & Associates, LLC took over Bi-State's EEO's investigatory functions to investigate Jordan's complaints of Brew's alleged sexual harassment.[4] In March 2019, after the investigation concluded and no action was taken against Brew, Jordan filed a Charge of Discrimination with the EEOC regarding Brew's sexual harassment and Bi-State's retaliation.  Doc. [128-14].  After filing the EEOC charge, Jordan reported that the complained-of-harassers were still working as her supervisors and had "doubled down" on the harassment and discrimination.  *Id.* at 3.  In June 2019, Jordan filed a second Charge of Discrimination with the EEOC relating to Bi-State employees alleged retaliatory conduct.  *Id.* Since then, Jordan reported "workplace retaliation and harassment increased," and in September 2020, she filed a third Charge of Discrimination.  *Id.* at 5.  During this time, Jordan has also filed several other internal complaints with Bi-State, *see, e.g.*, Doc. [128-25]; [124-28], and with much more frequency, she continues to make many calls to various Bi-State managers to report different forms of retaliation, Doc. [153] ¶ 66.

Plaintiff asserts four counts against Bi-State: (1) sex discrimination/harassment in violation of Title VII (Count I); (2) retaliation in violation of Title VII (Count II); (3) sex discrimination/harassment under the Fourteenth Amendment's Equal Protection Clause and § 1983 (Count III); and (4) retaliation under the First Amendment and § 1983.  Doc. [40] at 8–14. In the current Motions, Plaintiff moves for Summary Judgment on Counts I–III, Doc. [121], and Bi-State moves for Summary Judgment on all four Counts, Doc. [126].

**II.     STANDARD**

The standards applicable to summary judgment motions are well settled and do not change when both parties have moved for summary judgment.  *See Tower Rock Stone Co. v. Quarry &*

---

[4] Prior to 2018, Brew was never investigated for misconduct.  Doc. [153] ¶ 69.

*Allied Workers Loc. No. 830*, 918 F. Supp. 2d 902, 905 (E.D. Mo. 2013) (citing *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983)). The Court views any factual disputes in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 380 (2007), and "must grant a motion for summary judgment if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing Fed. R. Civ. P. 56(a)). "Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law." *Willert Home Prod., Inc. v. Driveline Retail Merch., Inc.*, 4:20-cv-01151-MTS, 2022 WL 485278, at *1 (E.D. Mo. Feb. 17, 2022). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager*, 716 F.2d at 1214.

The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude" summary judgment. *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 1002 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A party will not withstand summary judgment with "[m]ere allegations, unsupported by specific facts or evidence beyond [his or her] own conclusions." *Thomas v. Corwin*, 483 F.3d 516, 526 (8th Cir. 2007). But, where sufficient evidence supports a factual dispute, it is up to the jury to resolve the dispute at trial. *Liberty Lobby*, 477 U.S. at 248–49.

4

### III. DISCUSSION

For summary judgment purposes, a court must tether its analysis to the legal elements of the claims at issue. "[E]mployment discrimination cases are often fact intensive and dependent on nuance in the workplace." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1018 (8th Cir. 2011). The facts in this case are voluminous; the majority are in dispute, amounting to a "he-said-she-said" type situation. Because there remain genuine disputes of material fact relevant to each claim, summary judgment is improper. And, after considering Bi-State's affirmative defenses, Doc. [127-1] at 18–22, the Court finds that none entitles them to judgment as a matter of law.

#### A. *Sexual Harassment*

Turning to the sexual harassment claims against Bi-state, Jordan alleged two forms: hostile work environment and *quid pro quo* harassment.[5] To prove *quid pro quo* harassment, evidence must show (1) Jordan was a member of a protected class; (2) Jordan was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors; (3) Brew's harassment was based on sex; and (4) that "submission of unwelcome advances was an express or implied condition for receiving job benefits or [that] refusal to submit resulted in a tangible job detriment."[6] *Butler v. Crittenden Cty., Ark.*, 708 F.3d 1044, 1049 (8th Cir. 2013) (quoting *Newton v. Cadwell Labs.*, 156 F.3d 880, 882 (8th Cir. 1998)). To prove hostile work environment, evidence must show that (1) Jordan was a member of a protected group; (2) Jordan was subject to unwelcome harassment; (3) Brew's harassment was based on sex; (4) his harassment affected a

---

[5] "Title VII now prohibits both quid pro quo harassment, where an employee's submission to or rejection of a supervisor's unwelcome sexual advances is used as the basis for employment decisions, and hostile work environment harassment, where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Tenge v. Phillips Mod. Ag Co.*, 446 F.3d 903, 908 (8th Cir. 2006).

[6] Unlike hostile work environment, *quid pro quo* sexual harassment does not require the harassment to be severe or pervasive because any carried-out threat is an actionable change in the terms and conditions of employment. *Anderson v. Family Dollar Stores of Arkansas, Inc.*, 579 F.3d 858, 863 (8th Cir. 2009).

term, condition, or privilege of Jordan's employment. *E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 683 (8th Cir. 2012). Because the alleged harassment was committed by Jordan's supervisor, Bi-state may be strictly or vicariously liable for Brew's sexual harassment.[7] *Vance v. Ball State Univ.*, 570 U.S. 421, 428 (2013); *Crawford v. BNSF Ry. Co.*, 665 F.3d 978, 983 (8th Cir. 2012).

"Regardless of whether [Jordan's] claim is styled as hostile work environment or *quid pro quo* sexual harassment, the law is clear that the frequency and type of conduct is of the utmost importance in determining whether sexual harassment has occurred." *Brown v. Adams & Assocs., Inc.*, 4:19-cv-01864-MTS, 2020 WL 7360336, at *4 (E.D. Mo. Dec. 15, 2020). Exactly those things are in dispute here. There are significant disputes as to Brew's conduct—how often he interacted one-on-one with Jordan, the frequency of his inappropriate conduct, the severity of his conduct, and whether he made the comments and passes of which Jordan complains. *Pye*, 641 F.3d at 1018 (explaining factors for determining whether conduct rises to the level of harassment include frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating; and whether it unreasonably interfered with an employee's work performance). And whether Brew's "conduct rose to the level of sexual harassment is usually a factual determination for the jury," especially considering the mountain of disputed facts relating to Brew's conduct. *Moring v. Ark. Dept. of Correction*, 243 F.3d 452, 456 (8th Cir. 2001). These factual disputes necessarily affect the outcome of the suit. *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 419 (8th Cir. 2010) ("When an employee complains about inappropriate

---

[7] If Brew's harassment culminated into a "tangible employment action," Bi-State is *strictly* liable. *See Vance*, 570 U.S. at 424. If there was *no* tangible employment action, Bi-State will be vicariously liable, unless it proves the *Ellerth–Faragher* affirmative defense. *Id.* The *Ellerth–Faragher* affirmative defense protects an employer otherwise vicariously liable for a harassing supervisor's conduct. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08 (1998).

conduct that does not rise to the level of a violation of law, however, there is no liability for a failure to respond." (citing *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 67 (1st Cir. 2002) ("In the absence of conduct creating a sex-based hostile educational environment, laxity on the part of school officials in investigating an incident is not actionable under Title IX.")).

There is also a dispute whether Brew's alleged sexual harassment or Jordan's failure to submit to Brew's unwanted sexual propositions led to Jordan's "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[8]  *Vance*, 570 U.S. at 431 (describing tangible employment actions).  Or whether "[l]esser actions than demotion, suspension, or termination [constituted] adverse employment actions [because] their cumulative effect cause[d] [Jordan] to suffer 'serious employment consequences' that adversely affect[ed] or undermine[d] [her] position.'"[9] *Charleston v. McCarthy*, 926 F.3d 982, 989 (8th Cir. 2019) (quoting *Shockency v. Ramsey Cnty.*, 493 F.3d 941, 948 (8th Cir. 2007)).  Thus, whether Brew's alleged harassment culminated into a "tangible employment action" is a material factual dispute.  *See Vance*, 570 U.S. at 424 ("If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable.").

---

[8] Notably, it is disputed what job, promotion, or "tangible job detriment" is even at issue.  There is even a dispute regarding whether Jordan was told she had a job/promotion and who, if anyone, did tell her, and whether Brew had authority to make such a decision.  *Bethune v. City of Pine Bluff*, 5:18-cv-00138-BSM, 2019 WL 10892093, at *3 (E.D. Ark. July 17, 2019) (denying summary judgment on quid pro quo sexual harassment claim when dispute as to what authority the harasser had).  It is further disputed whether Brew had any role—direct or indirect—in such action. *Denn v. CSL Plasma, Inc.*, 816 F.3d 1027, 1035 (8th Cir. 2016) (explaining the discriminating employee must be linked to the decision-maker); *see also Fast v. Southern Union Co., Inc.,* 149 F.3d 885 (8th Cir. 1998) (finding that comments by non-decision maker provided circumstantial evidence of discrimination where other evidence indicated that the comments influenced the decision to fire the plaintiff).

[9] *Alvarez*, 626 F.3d at 421 ("'A hostile work environment is a cumulative phenomenon,' and a series of individual episodes of inappropriate behavior eventually can amount to a hostile environment." (citing *Engel,* 506 F.3d at 1124)).

7

But even if no tangible employment action was taken against Jordan, there remains disputed facts relating to whether Bi-State "exercised reasonable care to prevent and correct any harassing behavior." *Vance*, 570 U.S. at 424 (explaining even if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that the "employer exercised reasonable care to prevent and correct any harassing behavior");[10] *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1145 (8th Cir. 2007) (explaining this element of the affirmative defense is comprised of "two prongs: prevention and correction").[11] Specifically, there is a dispute as to whether and when Bi-state had actual or constructive notice of the harassment,[12] *Jenkins v. Winter*, 540 F.3d 742, 751 (8th Cir. 2008), which is of "paramount importance" when assessing whether an employer exercised reasonable care to prevent or promptly correct any sexually harassing behavior. *Crawford*, 665 F.3d at 984. There are also genuine disputes regarding the remedial action Bi-State did take. *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8th Cir. 2000) (finding employer not entitled to affirmative defense when employer minimized the plaintiff's complaints of sexual harassment, performed a cursory investigation, and eventually forced her to resign without disciplining the harasser); *see also Weger*, 500 F.3d at 722 (applying affirmative defense where harassment ended soon after report was made). These facts are necessary to determine Bi-State's liability. *Vance*, 570 U.S. at 424

---

[10] The Court notes this defense is unavailable to Bi-State if Jordan *did* suffer a tangible employment action, *Brenneman v. Famous Dave's of Am., Inc.*, 507 F.3d 1139, 1144 (8th Cir. 2007), which is a fact in dispute.

[11] Under the prevention prong, the employer must have exercised reasonable care to prevent sexual harassment. Under the correction prong, the employer must have promptly corrected any sexual harassment that occurred.

[12] This is especially true because Jordan provides an abundance of evidence that Bi-State was, or at the very least, should have been aware of Brew's harassment, either directly or because of "other unrelated misconduct at" Bi-State that should have "notified the company of additional harassment aimed at" Jordan. *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 422 (8th Cir. 2010). Thus, a jury must determine whether Bi-State exercised reasonable care to prevent sexual harassment.

(explaining an employer is liable for its supervisor employees' actions in violation of Title VII unless it can show it took preventative action and immediate and appropriate corrective action).

But the factual disputes discussed *supra* preclude the Court from determining whether Brew's actions amounted to "harassment" or "hostile work environment" as a matter of law.[13] These outstanding factual disagreements likely can be resolved only by a determination of the parties' credibility and the weighing of the evidence—but such matters are for a jury to resolve at trial, not the Court on a motion for summary judgment. *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2011) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011))). The Court does not have a full picture of either Brew's interactions with Jordan or the context surrounding those interactions. The number of disputed facts that are relevant to deciding whether Brew's conduct rises to the level of "unwelcome sexual harassment" or affect a "term, condition, or privilege of employment," renders summary judgment inappropriate.

B. *Retaliation*

Title VII prohibits employers from retaliating against any employee who complains of sexual harassment in the workplace. *Sellars*, 13 F.4th at 691. To prove retaliation, evidence must show (1) Jordan engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between Jordan's protected activity and the adverse action. *Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016). Once a plaintiff has alleged a materially adverse employment action, to survive a motion for summary judgment on a retaliation claim,

---

[13] Plaintiff's entire Motion for Summary Judgment is premised on a theory that because a Bi-State official stated, in her opinion, during a Rule 30(b)(6) deposition, that Jordan was sexually harassed or retaliated against, that Jordan, as a matter of law, was sexually harassed and retaliated against. This argument is without merit or support under the law.

9

there must be either direct evidence of retaliation or an inference of retaliation under *McDonnell Douglas* burden-shifting framework. *Hutton v. Maynard*, 812 F.3d 679, 683 (8th Cir. 2016). It is undisputed Jordan engaged in protected conduct when she internally reported Brew in Fall 2018 and continued reporting and filing complaints, both internally and externally, relating to Brew and other Bi-State employees' actions. *Pye*, 641 F.3d at 1020 (finding the filing of internal discrimination complaint qualifies as protected conduct). But there are substantial factual disputes relating to whether Jordan's complained of adverse acts were connected to her protected activities[14] or caused a material change in her employment status.[15] Thus, summary judgment is denied because genuine disputes remain as to whether Bi-state employees took adverse employment action against Jordan motivated by her Title VII-protected activities.

C. ***Section 1983 Claims***

Bi-State asserts Jordan "failed to state a claim" regarding her § 1983 claims (Count III and IV).[16] Doc. [131] at 16. But a motion for summary judgment, on its own, is not the appropriate

---

[14] There are factual disputes as to whether the decisionmakers in the alleged adverse actions were aware of the protected activities. *Dedmon v. Staley*, 315 F.3d 948, 949 n.2 (8th Cir. 2003) (explaining an employer cannot avoid liability by using a "purportedly independent person or committee as the decisionmaker where the decisionmaker merely serves as the conduit, vehicle, or rubber stamp by which another achieves his or her unlawful design"). Or, whether this is a "cat's paw" situation, in where Brew—the harassing subordinate who may have lacked decision-making power in the adverse actions—used a formal decisionmaker (here, other Bi-state employees) as a "dupe in a deliberate scheme to trigger" a discriminatory employment action. *See Qamhiyah v. Iowa State Univ. of Sci. & Tech.*, 566 F.3d 733, 742 (8th Cir. 2009); *see also Goodman v. Performance Contractors, Inc.*, 363 F. Supp. 3d 946, 958 (N.D. Iowa 2019) (collecting Eighth Circuit cases applying the cat's paw theory). This is especially important considering the evidence showing two-decades worth of Brew's inappropriate conduct with subordinate female employees, Bi-State employees consistently taking no action against him, and evidence (other than Jordan's own accounts) describing the retaliatory and cover-up culture at Bi-State, specifically in relation to upper level Bi-State employees "protection" of Brew.

[15] Jordan identifies several specific actions she suffered post-reporting Brew and other Bi-State employees' conduct, which she asserts are adverse employment actions, either independently or cumulatively. There is a genuine dispute regarding the existence, extent, and severity of these actions, thus, there are genuine disputes whether these actions had "serious employment consequences" that "adversely affected or undermined" Jordan's position. *Charleston*, 926 F.3d at 991.

[16] Bi-State's entire argument is comprised of a single sentence stating that the Court should "dismiss" the § 1983 claims because Jordan's Complaint "does not allege that the acts at issue in this lawsuit occurred because of Bi-state

vehicle for an argument that a Complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(h)(2), 12(b)(6). Thus, the Court does not address the substantive[17] arguments relating to Bi-State's municipal liability under § 1983.

## Conclusion

Because genuine disputes of material fact relevant to each claim remain, and Bi-State is not entitled to judgment as a matter of law, both parties' motions for summary judgment are denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, Doc. [121], is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Bi-State's Motion for Summary Judgment, Doc. [126], is **DENIED**

Dated this 21st day of April, 2022.

                                                                  MATTHEW T. SCHELP
                                                                  UNITED STATES DISTRICT JUDGE

---

policy or custom." Doc. [131] at 16. Plaintiff responded to this argument, Doc. [142] at 34–26, and Bi-State failed to respond in its Reply Brief, Doc. [156].

[17] The Court notes Jordan does not seek Summary Judgment on the free speech retaliation § 1983 claim (Count IV) against Bi-State. Rather, Jordan's Motion for Summary Judgment pertains to the Due Process § 1983 claim (Count III). However, as the Court discussed in its Memorandum and Order, disputes of fact remain as to Brew's alleged sexual harassment, Bi-State employees' alleged retaliation, and whether Bi-State employees were on notice of the harassment and failed to act accordingly.